IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

MICHAEL VAN DEELEN,                    )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )    Case No. 1:20-cv-00239-TFM-B
                                       )
BLOOMBERG L.P. and DANIEL GILL,        )
                                       )
                    Defendants.        )

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants Bloomberg L.P. ("Bloomberg") and Daniel Gill respectfully move this Court to dismiss this action under Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

This libel suit is utterly without merit as a matter of law.  The articles in suit are garden-variety news reporting of publicly filed motion papers and a federal bankruptcy court decision, and as such are privileged fair reports on judicial proceedings under the applicable laws of Virginia (where the articles were published), of Texas (where the underlying conduct occurred and where plaintiff resides), and Alabama (where plaintiff chose to file suit).[1]  Accordingly, Plaintiff's Amended Complaint must be dismissed.

***First***, the articles make immediately clear—starting from their headlines—that they are reporting on judicial proceedings.  The articles expressly reference and state that they are based on

---

[1] Alabama has no nexus to this claim and accordingly its law does not apply.  *See infra* 13-16.  Given the absence of any connection between this suit and Alabama, Defendants separately move that this action should be dismissed or transferred under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) because venue is improper in this District, or should be dismissed under the doctrine of *forum non conveniens*.  Defendants alternatively move that, if this case is transferred under 28 U.S.C. § 1404(a), it should go to the district with the most significant connections: the Eastern District of Virginia.

judicial records.   And all of the statements Plaintiff challenges are either direct quotes or paraphrases of those judicial records.

**Second**, as Plaintiff himself acknowledges, the articles accurately summarize the judicial records on which they report.   *See* Am. Compl. ¶ 18.   Recognizing the need to provide broad protection for news reports on judicial proceedings, the law is well settled that a report on a judicial proceeding need only be "substantially accurate" to fall within the privilege.   The articles here amply meet this standard.

**Third**, because legal proceedings by their nature abound with conflicting charges and countercharges, the fair report privilege applies to reporting on allegations contained in public court filings even if those allegations turn out to be false.   Thus, although Plaintiff implausibly asserts that Defendants should have independently investigated all matters alleged in the court papers, and then accepted Mr. Van Deelen's contrary version of the facts as the truth, Bloomberg had no obligation to do so.   In any case, Defendants included in the articles Plaintiff's version of events as set forth in his opposition to the sanctions request, undermining his claims that his views were not reflected.

In sum, the articles are quintessential fair reports of judicial proceedings—no different from what news organizations around the country publish every single day—and, as such, are absolutely privileged.

**Fourth**, neither Virginia nor Texas recognizes false light claims and, in any event, the same reasons that require dismissal of Plaintiff's libel claims likewise compel dismissal of his tagalong claim for false light.

*Fifth*, Plaintiff's new negligence claim falls short of establishing any legal duty breached by Defendants, and should be dismissed because it is duplicative of Mr. Van Deelen's deficient defamation claims.

*Lastly*, Mr. Van Deelen's defamation claims (and his false light and negligence claims as well) fail for a separate and independent reason: Section 8.01–223.2 of the Virginia Code provides immunity to Defendants' exercise of their right to speak on matters of public concern.

## BACKGROUND

### A.  The Parties

The Plaintiff, Michael Van Deelen, is a resident of Texas.  Am. Compl. ¶ 3.  Mr. Van Deelen improperly sues Bloomberg L.P. as the alleged publisher of Bloomberg Law.  *Id.* ¶ 1. Bloomberg Industry Group (formerly known as Bloomberg BNA, The Bureau of National Affairs, Inc., and BNA) is an affiliate of Bloomberg L.P. and is the actual publisher of Bloomberg Law, which published the two articles in suit.  *See id.* ¶¶ 1, 18; Gill Decl. ¶¶ 1, 5.  Thus Bloomberg Industry Group, not Bloomberg L.P., would be the proper defendant.[2]  Bloomberg Industry Group is incorporated in Delaware and is headquartered in Arlington, Virginia.  Gill Decl. ¶ 1.  Defendant Daniel Gill, who resides in Maryland, is a reporter employed by Bloomberg Industry Group.  Am. Compl. ¶ 2; Gill Decl. ¶¶ 1, 4.

---

[2] As a result, Bloomberg, L.P. reserves the right to seek dismissal as an improper party. *See McIver v. ExxonMobil Corp.*, 2009 WL 256282 at *1 (S.D. Ala. Jan. 7, 2009) (dismissing action against ExxonMobil as an improper party because it did not provide or administer the insurance plan under which the Plaintiff sued), *R. & R. adopted by McIver v. ExxonMobil Medicare Suppl. Plan*, 2009 WL 256279 (S.D. Ala. Feb. 2, 2009); *Swanson v. Allstate Ins. Co.*, 2010 WL 11565275, at *3-4 (N.D. Ala. June 1, 2010) (granting motion to dismiss because named party did not issue the insurance policy that gave rise to plaintiff's insurance claim).

**B.  The Bankruptcy Court Sanctions Proceeding**

This lawsuit concerns Bloomberg's publication of two articles reporting on McDermott International's ("McDermott") bankruptcy proceeding in the Southern District of Texas, in which Mr. Van Deelen appeared as a party in interest.  Am. Compl. ¶ 14.  Plaintiff claims that a March 18, 2020 Bloomberg Law article entitled "Shareholder of Bankrupt McDermott Accused of Threats, Vulgarity," and a March 25, 2020 Bloomberg Law article entitled "McDermott Shareholder Avoids Sanctions for Alleged Threats," were defamatory.  Copies of the two articles (hereinafter, the "Articles") are attached hereto as Exhibits A and B, respectively.[3]

On March 17, 2020, McDermott submitted in the bankruptcy court an application styled: "Emergency Motion for Michael Van Deelen to Appear and Show Cause Why He Should Not Be Held in Contempt of Court and Prohibited From Further Contact With the Debtors, Their Officers, or Their Counsel."  Am. Compl. ¶ 17.  A copy of McDermott's emergency motion is attached hereto as Exhibit C.  McDermott's emergency motion alleged Mr. Van Deelen had been "engaging in harassing and abusive behavior" towards a former McDermott officer and towards McDermott's counsel, describing Mr. Van Deelen's alleged conduct as "vulgar," "disgusting," and "threatening."  Ex. C ¶ 1.  In particular, the motion claimed:

---

[3] A court reviewing a motion to dismiss may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the defense motion, "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (in defamation case, considering documents not attached to complaint but incorporated by reference).  Here, since the Amended Complaint repeatedly refers to the judicial proceedings in the Southern District of Texas (*see, e.g.*, Am. Compl. ¶¶ 14-17), those court filings and orders should be considered by this Court at the Rule 12(b) pleading stage.  *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *see also* Fed. R. Evid. 201(b)(2).

> On March 12, 2020, the Court conducted a hearing on confirmation of the Debtors' plan of reorganization…. During and after that hearing, Mr. Van Deelen made certain threatening and vulgar remarks to Joshua Sussberg…, counsel for the Debtors. The undersigned apologizes to the Court in advance for the nature of the language which follows. During the hearing, Mr. Van Deelen can be heard on the audio recording calling the Court a "son of a bitch." (AUDIO CLIP, March 12, 2020, Hearing, 3:19:29-3:21:20). After conclusion of the March 12th Hearing, Mr. Van Deelen waited for Mr. Sussberg outside of the restroom and called him a "pasty white fuck" and said "I'll have my way with your wife."

*Id*. ¶ 7 (footnote omitted). The emergency motion attached the affidavit of Joshua A. Sussberg, McDermott's counsel at Kirkland & Ellis, LLP, describing his encounter with Mr. Van Deelen. *See* Ex. C.

McDermott's emergency motion further alleged that Mr. Van Deelen engaged in "harassing" conduct at the residence of a former company officer:

> Mr. Van Deelen also appeared unannounced at the home of Stuart Spence…, former Chief Financial Officer of McDermott International, Inc. Mr. Spence was on a conference call at the time and Mr. Spence's wife answered the door and was rattled by her interaction with Mr. Van Deelen.

*Id*. ¶ 8. The emergency motion attached the affidavit of Stuart Spence, attesting to Mr. Van Deelen's conduct at his residence and that, after speaking with Mr. Van Deelen, who appeared "unannounced" at their home, his wife appeared "visibly shaken." *See* Ex. C (Spence Aff. ¶¶ 4-5). In addition, the emergency motion recounted Mr. Van Deelen's "history of sanctionable behavior," citing a decision by the Western District of Missouri upholding a "prior sanctions order against Mr. Van Deelen finding that 'Van Deelen failed to comply with general rules governing proper courtroom decorum and respect for the Court and the judicial proceedings which he had initiated.'" *See* Ex. C ¶ 10 (quoting *Van Deelen v. City of Kansas City*, 2006 WL 2077640, at *1 (W.D. Mo. 2006)).

McDermott's emergency motion argued that Mr. Van Deelen's "conduct threatens violence against parties in the case and their families and is sanctionable under the Court's inherent power under section 105 of the Bankruptcy Code and pursuant to the Supreme Court's holding in *Chambers [v. NASCO, Inc.*, 501 U.S. 32 (1991)]." *See* Ex. C ¶ 15. McDermott requested that the court "prohibit Mr. Van Deelen from contacting the Debtors, their current officers, directors, or employees, their counsel or other professionals, or any of their families in person or via telephone or electronic forms of communication and ask[ed] that [the] Court limit Mr. Van Deelen's contact to any such party to filings on the docket in these Cases." *Id.* ¶ 17.

On March 18, 2020, Mr. Van Deelen submitted a response to the emergency motion and a sworn affidavit in support. *See* Am. Compl. ¶ 21. A copy of Mr. Van Deelen's response in opposition to the emergency motion is attached hereto as Exhibit D. In his response, Mr. Van Deelen denied that he called the court a "son of a bitch," and "respectfully ask[ed the] Court to listen to that section of the audio" from the hearing at issue, asserting: "If Van Deelen would have called the Court a 'son of a bitch', the Court would certainly have heard him do so." Ex. D ¶ 1. As for the other allegations in the emergency motion, Mr. Van Deelen argued that those "alleged improprieties" took place "when Court was not in session, outside the courtroom and in violation of no Court order," and, therefore, "[t]he Court had no jurisdiction over Van Deelen under such circumstances." *Id.* ¶ 2.

As for the specific claims regarding Mr. Van Deelen's out-of-court conduct, Mr. Van Deelen averred that he went to Mr. Spence's residence in an effort to resolve a service of process issue related to a subpoena he had issued to Mr. Spence "to testify during the 3/12/20 Plan Confirmation Hearing." *Id.* ¶¶ 7-10. According to Mr. Van Deelen:

> To avoid having possibly served the wrong person, Van Deelen went to the Proof of Service address and rang the bell. A middle-

> aged lady answered the bell.  Van Deelen politely asked if Mr. Stuart
> Spence was home.   The lady said 'no'.   Van Deelen then
> apologetically and very politely told the lady that he had had a
> summons issued to Mr. Spence at that address and that Van Deelen
> was afraid the wrong person may have been served.  Van Deelen
> then politely asked the lady if Mr. Stuart Spence lived there.  She
> said 'yes'.  Van Deelen then politely asked the lady if Mr. Spence
> had worked at McDermott.  She replied 'yes'.   At that point, Van
> Deelen apologized for having bothered the lady and left.

*Id.*  As for allegations regarding his conduct toward McDermott counsel Mr. Sussberg, Van Deelen

denied the accusations set forth in the emergency motion.  *Id.* ¶ 18.  Mr. Van Deelen alleged that

during a March 12, 2020 court hearing, Mr. Sussberg had "said to Van Deelen and all who could

hear:  'You are disgusting!' and other insults."  *Id.* ¶ 15.  Mr. Van Deelen denied that he had

accosted Mr. Sussberg outside the courtroom, claiming instead:

> After the hearing, Van Deelen did not follow Mr. Sussberg
> anywhere, including the restroom.  Like many at the end of the long
> hearing, Van Deelen needed to use the restroom.  As Van Deelen
> was entering the restroom, Mr. Sussberg was leaving the restroom.
> Due to the unprofessional behavior exhibited by Mr. Sussberg
> towards Van Deelen during the hearing …, Van Deelen wanted to
> determine Mr. Sussberg's name so he could make a formal
> complaint against him.  Mr. Van Deelen said to Mr. Sussberg: "May
> I have your name, sir?"  Mr. Sussberg angrily refused to give Van
> Deelen his name.  Instead, Mr. Sussberg again told Van Deelen:
> "You are disgusting!"  He also told Van Deelen other things
> including: "You are a fool!"  Mr. Sussberg is a young, stocky man.
> Van Deelen is a 70 year-old senior citizen.  Mr. Sussberg's words,
> tenor and posture caused Van Deelen to be afraid for his safety.  Van
> Deelen began to have heart palpitations and he remained near the
> restroom while Sussberg left and went down the hallway towards
> the elevators.  All of a sudden, Sussberg came rushing back down
> the hallway and towards the restroom area where Van Deeelen was
> and angrily charged Van Deelen.  Mr. Sussberg then began calling
> Van Deelen names again.  Mr. Sussberg stood only inches away
> from Van Deelen, shouting at Van Deelen.  Van Deelen was terrified
> by Mr. Sussberg's actions.  Mr. Sussberg eventually left and again
> went down the hallway towards the elevators.

*Id.* ¶ 16.  Finally, as for McDermott's claims that Mr. Van Deelen had been sanctioned by the Western District of Missouri, he responded that the proceeding was "a non-bankruptcy case," and that "a significant amount of the sanctions were overturned on appeal."  *Id.* ¶ 24.

Thereafter, on March 23, 2020, the presiding Chief Judge David R. Jones issued an order on McDermott's emergency motion.  A copy of Judge Jones's order is attached hereto as Exhibit E.  (McDermott's motion to show cause, Mr. Van Deelen's response in opposition, and Judge Jones's order on the motion are hereinafter referred to as the "Sanctions Proceeding.")  On the allegation that Mr. Van Deelen had called Judge Jones a "son of a bitch," the court stated that "the Court's staff did hear Mr. Van Deelen's statement and immediately reported it to chambers," and that "although Mr. Van Deelen was facing away from the microphones located on counsel table, Mr. Van Deelen's statement is audible on the original audio with headphones."  *Id.*  The court concluded that Mr. Van Deelen's sworn affidavit to the contrary was "a false statement."  *Id.*  As for McDermott's further allegations of out-of-court misconduct, the court found that "[g]iven that Mr. Van Deelen has demonstrated the propensity to make false statements under oath, the Court has grave concerns about Mr. Van Deelen's affidavit and gives it little weight under the circumstances."  *Id.*  The court further noted "Mr. Deelen's prior conduct before the Court and reference to 'shooting' during the confirmation hearing," and stated that such conduct raised "concerns about Mr. Van Deelen's mental stability."  *Id.*  Based on these findings, the court concluded "that Mr. Van Deelen poses a legitimate risk to the safety of courthouse staff and litigants that oppose his position."  *Id.*

Acknowledging that Mr. Van Deelen was "correct" in asserting that the court could not sanction him for "conduct outside the courtroom," the court concluded that it would exercise its "authority and the duty to protect those parties that appear before it."  The court denied the request

8

for sanctions, but otherwise ordered that Mr. Van Deelen was "prohibited from contacting the Court and its staff by any means"; "prohibited from contacting Joshua Sussberg or any member of his family in any manner"; that "[a] copy of this Order shall be delivered to the United States Marshal for further investigation of Mr. Van Deelen's conduct"; that "Mr. Van Deelen may not enter the federal courthouse except with the escort of a court security officer"; and that "[a] copy of this Order shall be delivered to the United States Attorney for investigation of Mr. Van Deelen's conduct in this case." *Id*.

## C.  The Articles

Van Deelen sues on two Articles.  The first article, published March 18, 2020, bears the headline "Shareholder of Bankrupt McDermott Accused of Threats, Vulgarity," and the sub-heads "Company says shareholder has history of abusive behavior"; "Shareholder denies all accusations."  Ex. A; Am. Compl. ¶ 20.  The article goes on to report that "[a] shareholder," later identified as Mr. Van Deelen, "allegedly called a judge 'son of a bitch' during a recent hearing," that he was alleged to have "made vulgar remarks inside and out of the courtroom and appeared at the home of a former company director, rattling his wife, according to an emergency motion McDermott filed Tuesday in the U.S. Bankruptcy Court for the Southern District of Texas."  *Id*. The March 18 article explains that McDermott's motion sought an order from the court for Van Deelen to "show cause why he shouldn't be sanctioned" for the alleged conduct.  *Id*.  The article reports that McDermott alleged in its motion both that "Van Deelen can be heard calling Chief Judge David R. Jones a 'son of a bitch' on an audio transcript," and that Van Deelen "confronted the company's bankruptcy attorney near the courthouse restroom."  *Id*.  The article further notes that the McDermott motion cited "a 2006 case in the Western District of Missouri," where Van Deelen was found to have "interrupted and argued with the judge, 'made flippant and disrespectful remarks,' and even fabricated evidence to support his claims."  *Id*.

The March 18 article then provides Van Deelen's response in opposition to the motion, noting at the outset that, while Van Deelen "declined Bloomberg Law's request for comment," he denied the allegations in a court filing wherein Van Deelen asserted that he "didn't refer to the judge in any vulgar or disrespectful manner," and otherwise "acknowledged speaking with the company officer's wife outside their home, but he was at all times polite," pointing out that the officer's wife "didn't submit an affidavit or other evidence in support of McDermott's claims." *Id*. The article goes on to report Mr. Van Deelen's arguments that the "court lacks jurisdiction over his out-of-court conduct" and that "he wasn't violating any law or court order," and was actually "'terribly frightened' by McDermott's lawyer during a hallway exchange." *Id*.

The second article in suit, published March 25, 2019, bears the headline "McDermott Shareholder Avoids Sanctions for Alleged Threats," and the sub-heads "Debtor alleged shareholder made threats, used abusive language"; "Court denies sanctions, but prohibits shareholder from contacting court, attorney." *See* Ex. B. The article then leads with reporting that "[t]he bankruptcy judge" presiding over the McDermott bankruptcy proceeding "denied the company's emergency motion to sanction a disgruntled shareholder, while at the same time barring him from contacting court staff or the debtor's counsel." *Id*. The March 25 article goes on to summarize the allegations in McDermott's March 17 emergency motion that "Van Deelen engaged in 'harassing and abusive behavior' toward a former officer and bankruptcy counsel," and that McDermott claimed Mr. Van Deelen "called Jones a 'son of a bitch' during open court and that he improperly appeared at the home of one of the company's former shareholders." *Id*. The article then states that Mr. Van Deelen "denied the accusations in a March 18 filing." *Id*.

The March 25 article, reporting on the court's decision, summarizes Judge Jones's March 23, 2020, order, which "agreed with Van Deelen that he can't sanction him for out-of-court

conduct, and that the shareholder hadn't violated a prior court order." *Id*.  The article goes on to detail Judge Jones's findings, including that "his staff heard Van Deelen call him a 'son of a bitch,' and that the statement is audible on the court's audio recording of the prior hearing, despite Van Deelen's affidavit denying it." *Id*.  In addition, the March 25 article reports that Judge Jones "also noted that Van Deelen referred to 'shooting' at the confirmation hearing for McDermott's reorganization plan." *Id*.  The article concludes by detailing Judge Jones's ruling prohibiting Mr. Van Deelen "from contacting the court or its staff—except by filing documents—and from contacting McDermott's counsel Joshua Sussberg of Kirkland & Ellis LLP or any member of his family." *Id*.  Finally, the article states that Judge Jones's order "prohibited" Mr. Van Deelen "from entering the courthouse unless escorted by court security, and that a copy of his order by delivered to the U.S. marshal and the U.S. attorney for investigation into Van Deelen's conduct." *Id*.

Mr. Van Deelen filed his lawsuit against Bloomberg and Gill on April 24, 2020.  After Defendants moved to dismiss or transfer, see ECF Nos. 8-9, Plaintiff filed an Amended Complaint. ECF No. 13.  The Amended Complaint reasserts claims for defamation and false light, adds a negligence claim, and seeks more than $200,000.00 in damages and injunctive relief.  Am. Compl. ¶¶ 32, 37, 41, 46.  Mr. Van Deelen alleges principally that Defendants defamed him by publishing the allegations and findings made against him in the Sanctions Proceeding, rather than independently "investigat[ing] the alleged facts" and accepting Mr. Van Deelen's denials as true. *See id*. ¶¶ 21, 30, 35, 40, 43.

## LEGAL STANDARD

Under Rule 12(b)(6), a plaintiff must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While the Court must accept well-pleaded factual allegations as true, it need not accept "[l]egal conclusions without adequate factual support." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).  These "[f]actual allegations

must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, in deciding such a motion, the Court may consider documents on which the complaint relies and documents subject to judicial notice—here, the Articles and court documents from the Sanctions Proceeding. *See supra* note 3.  Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Where, as here, a plaintiff has "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 570.

Courts have recognized the particular value in quickly resolving via a motion to dismiss claims implicating speech: "To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.). Thus, courts recognize the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).  Indeed, defamation actions are particularly susceptible to early dismissal because the "central event—the communication about which suit has been brought—is literally before the judge at the pleading stage."  2 Robert D. Sack, SACK ON DEFAMATION § 16.2.1, at 16-3 (5th ed. 2017). Where, as here, the challenged statements constitute privileged fair reports of judicial proceedings, courts routinely dismiss such actions at

the pleading stage based on a comparison of the articles and the judicial records.[4]  *See infra* note 8.

## ARGUMENT

### A.     If a Choice Were Necessary, Virginia Law Should Be Applied

Virginia law should be applied to assess the merits of Defendants' motion to dismiss the Amended Complaint.  In a diversity action (as this action is), this Court must apply the choice-of-law principles of Alabama.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).  For tort claims, Alabama adheres to the Second Restatement of Conflict of Laws rule to determine the applicable substantive law.  *See Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009).  The Restatement (Second) of Conflict of Law § 146 (1971) holds that "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship."  Alabama courts have found in defamation actions that the location of the harm is the place where the defamatory statements were published to third parties.  *Williams v. A.L. Williams & Assocs.*, 555 So. 2d 121, 124 (Ala. 1989) ("The parties and the trial court agreed that Georgia substantive law governs the libel claim because the place of the wrong is where the defamatory statement is communicated, and that the law of that place generally controls the claim.") (citing Restatement (Second) of Conflict of Laws § 149 (1971)).  In this case, the Articles were published from Bloomberg Industry Group's headquarters in Virginia, *see* Am. Compl. ¶ 2; Gill Decl. ¶ 5, and thus the law to be applied here is Virginia law.

---

[4] Plaintiff's request for injunctive relief is particularly unfounded and unconstitutional.  *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.").

But even if the Court were to find that the applicable law should be that of plaintiff's state of residence (Texas) because that is where the plaintiff's reputation suffers the most, the Second Restatement's "significant relationship" approach nonetheless allows for *dépeçage*, such that a court can apply different state laws to different issues in a single case. *See* Restatement (Second) of Conflict of Law § 146; *id.* § 145 cmt. d ("[C]ourts have long recognized that they are not bound to decide all issues under the local law of a single state.").

The only conflict of law question potentially raised by this motion is which state law should apply to Defendants' affirmative defenses, and here that state is clearly Virginia.[5]  While the issue has not arisen in Alabama, on point decisions from courts in other jurisdictions that follow the same Restatement test make it clear that Virginia law should apply to Defendants' fair report privilege defense.  In *Wilkow v. Forbes, Inc.*, 2000 WL 631344 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d 552 (7th Cir. 2001), for example, an Illinois plaintiff sued a New York-based publisher for defamation over a nationally published magazine article.  The court held that Illinois law applied to "the defamation at issue," but that the law of the defendant's domicile—New York— applied to the fair report privilege defense.  It noted that "[t]he issue of whether a statement is defamatory or invades the right to privacy is distinct [for choice of law analysis] from the issue of

---

[5] In any case, even if Texas law were to apply, the outcome would be no different because the fair report privilege under Virginia and Texas law are substantially similar.  *Compare Alexandria Gazette Corp. v. West*, 93 S.E.2d 274, 279 (Va. 1956) (Virginia law affords a fair report privilege, in which "[t]he publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct statement of the transcript of the record.") *and Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1993) (applying Virginia law and explaining "the 'fair report' privilege is not absolute, and can be lost where, with actual malice, the press plainly adopts the defamatory statement as its own"), *with* Tex. Civ. Prac. & Rem. Code Ann. § 73.002 (fair report privilege bars liability for defamation when the publication is a "fair, true, and impartial account" of judicial, executive, and other official proceedings, and the privilege does not apply "if it is proved that the matter was republished with actual malice").

14

whether that statement is privileged." *Id*. at *5. The court explained that "[t]he fair reporting privilege is meant to protect speakers, not provide a remedy to plaintiffs," and the fact that the publishing decisions were made in New York gave that state "a more substantial relationship with the conduct at issue here." *Id*. at *7. *See also Global Relief Found. v. N.Y. Times Co.*, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) (Illinois law applied to the underlying defamation claim while "the law of California will apply to defenses to defamation").

Similarly, in *Gubarev v. BuzzFeed, Inc.*, 2018 U.S. Dist. LEXIS 97246 (S.D. Fla. June 5, 2018), the Florida federal court applied New York law to the defendants' affirmative defenses— including their fair report privilege defense—because "the affirmative defenses asserted by Defendants," who wrote, published, and edited the publication in suit in New York, "exist to protect speakers, not to provide Plaintiffs a remedy." *Id.* at *14. Because "the decision to publish . . . was made in New York, . . . New York has a strong interest in determining the applicability of the affirmative defenses." *Id.* So too here with respect to the application of the laws of Virginia.

Bloomberg Law, which published the Articles, is based in Virginia, not Alabama or Texas. *See* Am. Compl. ¶ 1; Gill Decl. ¶ 1. Since Virginia has "a more significant relationship" to the issues presented by Defendants' affirmative defenses than does Alabama (where no party even resides), Virginia law should apply.[6] *See Michel v. NYP Holdings, Inc.*, 2015 WL 1285309, at *3

---

[6] If the court were to apply the law of the state where Plaintiff resides, Texas, the fair report privilege would still protect the Articles since the elements are materially similar. *See supra* note 5. Alabama's fair report privilege differs from Virginia and Texas because it may be lost if "the defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable explanation or contradiction thereof by the plaintiff." *See* Ala. Code § 13A-11-161 (1975). Here, however, where there is absolutely no relationship, significant or otherwise, between this case and the chosen forum, Alabama law does not apply. However, the difference found in Alabama's fair report privilege explains why Mr. Van Deelen seemingly selected this venue out of nowhere. In any event, even if Alabama law did apply, Defendants' Articles would still qualify as privileged fair reports since Mr. Van Deelen's position

(S.D. Fla. Mar. 4, 2015) (applying New York law to claim by Florida plaintiff where New York-based defendant "researched and wrote" the allegedly defamatory statements in New York), *aff'd in relevant part*, 816 F.3d 686 (11th Cir. 2016).

### B.   Plaintiff's Defamation Claim Is Barred By The Fair Report Privilege

Virginia has long recognized a privilege to report on legal proceedings, even if the story contains defamatory material, so long as the account is fair and substantially accurate.  Under Virginia's fair report privilege, "[a] publisher is immune from liability for articles that accurately describe or summarize the contents of an official statement or report." *Ramey v. Kingsport Publ'g Corp.*, 905 F. Supp. 355, 358 (W.D. Va. 1995) (privilege "applies to press accounts of such official proceedings as court records").  In particular, publishers may not be held liable for reporting the contents of government records even if it turns out that "the record is incorrect or if [the record] contains falsehoods." *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 485 (E.D. Va. 2018); *see also Alexandria Gazette*, 93 S.E.2d at 279 ("incorrectness of the record" does not destroy privilege).  And a report need not extensively explain every part of the government record for the privilege to apply, so long as its summary is substantially accurate. *Spirito*, 350 F. Supp. 3d at 487; *see also Alexandria Gazette*, 93 S.E.2d at 281-82 (privilege applies even if "news Article was not exactly correct," where it "constituted no substantial departure from" government record).  To the extent a showing of actual malice could defeat the privilege, Plaintiff would be required to plausibly plead that Defendants knew or had reckless disregard for whether their description and summary of the Sanctions Proceeding was accurate.[7]  *See Chapin*, 993 F.2d at 1098; *Rushford v.*

---

was summarized in his response to the emergency motion in the Sanctions Proceeding and reported on in the Articles.

[7] While there is still some debate as to whether actual malice can defeat the fair report privilege, the Virginia Supreme Court never having addressed the issue, a number of Virginia courts have adopted the modern view that actual malice is irrelevant and the privilege absolute,

*New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988) (applying Virginia law); *Reuber*, 925 F.2d at 714 ("[T]he privilege makes it more difficult for a reviewing court to conclude that a news report on government functions was published in reckless disregard of the truth.").

The fair report privilege exists to enable the press to fulfill its role "to inform citizens of what the government is doing." *Reuber v. Food Chem. News*, 925 F.2d 703, 712 (4th Cir. 1991). "In return for frequent and timely reports on governmental activity, defamation law has traditionally stopped short of imposing extensive investigatory requirements on a news organization reporting on a governmental activity or document." *Id.* Without the privilege, the media would be discouraged from reporting "regularly on government operations so that citizens can monitor them." *Id.*; *see also Ditton v. Legal Times*, 947 F. Supp. 227, 230 (E.D. Va. 1996) ("The availability of the privilege encourages the media to disseminate official records—whether verbatim or in fair summaries—without fear of liability for any false, defamatory material that they might contain.") (citation omitted), *aff'd*, 129 F.3d 116, 1997 WL 693044 (4th Cir. Oct. 29, 1997) (per curiam) (unpublished table decision).

Because of this public policy underlying the privilege, a news organization is "entitled to dismissal" on a Rule 12(b)(6) motion if it is clear from a comparison of the government record to the challenged reporting that the privilege applies, *Spirito*, 350 F. Supp. 3d at 485-88. This allows the news organization to avoid incurring "further litigation costs, lest similar defamation claims have a chilling effect on government reporting." *Spirito*, 350 F. Supp. 3d at 488-89 (granting

---

*see Bateman Litwin N.V. v. Swain*, 2009 WL 10688302, at *7 (E.D. Va. Mar. 18, 2009), and some Virginia courts have squarely held that it does not, *Vaile v. Willick*, 2008 WL 2754975, at *7 (W.D. Va. July 14, 2008) ("The publication of public records to which everyone has a right of access is absolutely privileged in Virginia."). Here, the applicability of the actual malice standard makes no difference because Mr. Van Deelen has not plausibly pled that Defendants published the Articles with actual malice. *See infra* 20-22.

media defendants' motion to dismiss on ground of fair report privilege); *see also, e.g.*, *Chapin*, 993 F.2d at 1097-99 (affirming Rule 12(b)(6) dismissal on fair report ground, among others). Virginia courts routinely grant pre-answer motions to dismiss libel actions on the basis of the fair report privilege.[8]

Here, applying the fair report privilege is a straightforward exercise.  Bloomberg Industry Group's Articles lie at the very heart of the fair report privilege—straightforward recountings of a filed motion, a response in opposition, and a court decision.  *See* Ex. F (comparing each challenged statement to the court records on which Bloomberg Industry Group and Gill relied).  The Sanctions Proceeding is exactly the sort of judicial proceeding to which the privilege attaches.  *Rushford*, 846 F.2d at 254-55; *Alexandria Gazette*, 93 S.E.2d at 279.  The Court need only compare the Articles with the proceedings they reported on to conclude that the Articles are substantially accurate accounts.  *See, e.g.*, *Elder v. Tronc Inc.*, 18 WL 3233135, at \*2-3 (D. Conn. July 2, 2018) ("[T]he Court can conclude whether the publications at issue were substantially accurate based upon comparison of the articles with the underlying judicial decision.").  The Court may undertake this inquiry now, upon a motion to dismiss, because the only materials outside the pleadings

---

[8] A court may apply the privilege as a matter of law when "the facts are not in dispute and reasonable people could not differ [as to] whether or not the publication constitutes a substantial departure from the public record . . . ." *Rush v. Worrell Enters., Inc.*, 1990 WL 751410, at \*3 (Va. Cir. Ct. Sept. 10, 1990); *see also Alexandria Gazette*, 93 S.E.2d at 281-82 (finding that "[t]he facts upon which the claim of privilege is based and the question of its abuse are so free from dispute as to require that it be held, as a matter of law, that the publication was privileged, and there was no abuse of the privilege.").  Courts thus routinely dismiss libel actions for failure to state a claim where the publication falls within the fair report privilege.  *E.g.*, *Spirito*, 350 F. Supp. 3d at 488; *Chapin*, 993 F.2d at 1097-99 (affirming Rule 12(b)(6) dismissal on fair report ground, among others); *see also Tacopina v. O'Keeffe*, 2015 WL 5178405, at \*6-7 (S.D.N.Y. Sept. 4, 2015), *aff'd*, 645 F. App'x 7 (2d Cir. 2016); *Wilkow* 2000 WL 631344; *Lee v. TMZ Prods., Inc.*, 710 F. App'x 551, 560-61 (3d Cir. 2017); *Hargrave v. Washington Post*, 2009 WL 1312513, at \*1 (D.D.C. May 12, 2009), *aff'd*, 365 F. App'x 224 (D.C. Cir. 2010).

required to determine whether the privilege applies are judicial records of which this Court may take judicial notice.  *See supra* notes 3 & 8; Ex. F.

The privilege requires dismissal of the Amended Complaint because the Articles in suit are substantially accurate reports of the Sanctions Proceeding.  Indeed, the Amended Complaint openly concedes that at least some of the statements in the Articles are accurate accounts of allegations made in court proceedings.  Am. Compl. ¶ 18 ("defendants changed, edited and cut and pasted parts of the [sanctions] motion").  That should end the matter.

Nonetheless, even beyond Plaintiff's admissions, it is evident that the Articles accurately recounted McDermott' allegations that Mr. Van Deelen engaged in "threats" and "vulgarity."  *See* Exs. A & F.  "[A] newspaper article is, by its very nature, a condensed report of events," and Bloomberg Industry Group's Articles are protected fair reports so long as they were "not misleading," and "composed and phrased in good faith under the exigencies of a publication deadline."  *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67-68 (1979).  Each article in suit attributes allegations to the judicial records, quoting from them and accurately summarizing McDermott's claims that Mr. Van Deelen "can be heard calling Chief Judge David R. Jones a 'son of a bitch' on an audio transcript"; "made vulgar remarks inside and out of the courtroom and appeared at the home of a former company director, rattling his wife."  Exs. A & F.  Plaintiff complains that the Articles defamed him by stating that he has a history of sanctioned conduct, but again, the statements he points to are directly attributed to court papers: "But Van Deelen has a history of abusive and sanctionable behavior, McDermott said. During a 2006 case in the Western District of Missouri, he interrupted and argued with the judge, 'made flippant and disrespectful remarks,' and even fabricated evidence to support his claims, according to the company's motion."  Exs. A & F.

The fact that Mr. Van Deelen believes that allegations leveled against him in open judicial proceedings are false or unsubstantiated has no bearing on the press's right to report, without fear of liability, on what is said and done in the public courts. Indeed, the fair report privilege immunizes publication of information contained in official government records, such as court files, even if the information in those records turns out to be incorrect, provided that the publication fairly summarizes the gist or sting of the record. *See, e.g.*, *Alexandria Gazette*, 93 S.E.2d at 279; *Reuber*, 925 F.2d at 712. The point of the privilege is that it applies regardless of whether the plaintiff alleges that something said about him in the proceeding was false and defamatory. Otherwise, journalists could not report about official proceedings because they routinely contain defamatory statements. Nevertheless, the Articles prominently include Mr. Van Deelen's denials: in the sub-headline to the March 18 article ("Shareholder denies all accusations"); in a detailed recounting of Mr. Van Deelen's response in opposition to the emergency motion ("He didn't refer to the judge in any vulgar or disrespectful manner, and urged the court to listen to the audio transcript from the hearing."; "He acknowledged speaking with the company officer's wife outside their home, but he was at all times polite"); and again in the March 25 article ("Van Deelen denied the accusation in a March 18 filing."). *See* Exs. A-B, F.

Plaintiff's theory appears to be that even if the Articles were fair and accurate reports of judicial records from the Sanctions Proceeding, he can deny Defendants the protection of the privilege by alleging that Bloomberg Industry Group and Gill should have investigated the truth of the claims asserted in McDermott's emergency motion and Judge Jones's order, and that its failure to do so amounted to actual malice. *See* Am. Compl. ¶¶ 21, 23, 30, 35, 40, 43. But, "the failure to investigate, standing alone, does not give rise to a conclusion that the defendants acted with actual malice[; r]ather, the plaintiff must plead facts giving rise to a reasonable inference that

the defendants acted to intentionally avoid learning the truth." *Michel*, 816 F.3d at 704. *See also Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 317 (4th Cir. 2008) ("The standard requires that the defendant have a 'subjective awareness of probable falsity' of the publication.") (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974)); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.").

Even if such a showing could constitute actual malice and defeat the privilege (and it cannot), Mr. Van Deelen has failed to plead sufficient facts to make a plausible showing that Bloomberg Industry Group or Gill had any reason to doubt the information that they relied on, much less that they "in fact entertained serious doubts" or knew the information was false. *See Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (quoting *St. Amant*, 390 U.S. at 731). The Amended Complaint alleges only that "defendants published their articles with recklessness, reckless disregard for the truth and with prior information regarding their falsity." Am. Compl. ¶¶ 30, 35. "A formulaic recitation of the elements of a cause of action will not do." *Mayfield*, 674 F.3d at 377-78 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, e.g.*, *Greer v. Petersburg Bureau of Police*, 2017 WL 1427246, at *4 (E.D. Va. Apr. 19, 2017) (dismissing defamation claim and noting that, "[w]hile the Complaint makes conclusory statements that Defendants acted with malice, its factual allegations are insufficient to raise plaintiff's right to relief above the speculative level"). Indeed, the Articles can hardly be considered reckless where the court overseeing the Sanctions Proceeding affirmed McDermott's allegations that Mr. Van Deelen indeed referred to the presiding judge as a "son of a bitch," found his affidavit to the contrary "false" and of "little weight," imposed sanctions to limit his

interactions with counsel and the court, and referred the matter to the U.S. Marshal and U.S. Attorney.  *See* Exs. E & F.  And, as noted above, that is simply not how the fair report privilege works.  Instead, a defendant's alleged knowledge of falsity is irrelevant to whether the privilege applies because the privilege exists even if the reporter of defamatory statements made in court believes or knows them to be false; the privilege is abused only if the report fails the test of fairness and accuracy.  *Spirito*, 350 F. Supp. 3d at 485-88.

Accordingly, it is clear that the Articles are protected by the fair report privilege, and Mr. Van Deelen's defamation claims must be dismissed.

### C.    Plaintiff Fails to State a Claim for False Light

Neither Virginia nor Texas recognizes the tort of false light, *see WJLA–TV v. Levin*,  564 S.E.2d 383, 395 n.5 (Va. 2002); *Cane v. Hearst Corp.*, 878 S.W.2d 577, 578-79 (Tex. 1994); *Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 n.2 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).  Even if Alabama law applied—which it does not because it has no nexus to this case—Plaintiff's false light claim must be dismissed.  To be subject to liability for the tort of false light invasion of privacy under Alabama law, a defendant must have "knowledge of or act[ ] in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012) (citations and internal quotation marks omitted).  Because, as discussed above, Mr. Van Deelen does not plausibly allege that Bloomberg Industry Group or Gill acted recklessly when they published the Articles, each is entitled to dismissal of Plaintiff's false light invasion of privacy claim.  *See Smith v. Huntsville Times, Co.*, 888 So. 2d 492, 496 n.1 (Ala. 2004) (explaining that the "same standard applies to all of [plaintiff's] claims, regardless of whether they are stated as 'defamation' or 'false light invasion of privacy'"); *Lovingood v. Discovery Commc'ns, Inc.*, 275 F. Supp. 3d 1301, 1314 (N.D. Ala.

2017), *aff'd*, 800 F. App'x 840 (11th Cir. 2020), *cert. denied*, --- S. Ct. ---, 2020 WL 2621839 (May 26, 2020).

### D.   Plaintiff Fails to State a Claim for Negligence

Mr. Van Deelen adds a negligence claim to his Amended Complaint, evidently in an attempt to circumvent the high bar presented by the actual malice standard.  To state a claim for negligence, a plaintiff must allege the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage.  *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003).  Although Mr. Van Deelen claims that Defendants "owed a duty to the plaintiff to investigate the McDermott motion in order to determine its veracity," Am. Compl. ¶ 43, he fails to identify any legal authority that could support such a duty.  Moreover, it is apparent that Mr. Van Deelen is attempting to duplicate his defamation claims under the guise of a negligence action. *See Jackson v. Michalski*, 2011 WL 3679143, at *16 (W.D. Va. Aug. 22, 2011) (dismissing duplicative negligence claim under Virginia law).  Courts routinely dismiss negligence cases on these grounds—and so should the Court here.  *Jackson v. US Steel Corp.*, 763 F. App'x 805, 808 (11th Cir. 2019) (negligence claims preempted by defamation claims where plaintiff "bases his negligence claims on the defendants' … duty not to defame" him); *Southbark, Inc. v. Mobile Cty. Comm'n*, 974 F. Supp. 2d 1372, 1386 (S.D. Ala. 2013) (dismissing "duplicative" negligence claim where plaintiff also pled claim for defamation).[9]  Even if the negligence claim were not dismissed

---

[9] *See also, e.g., Olney v. Town of Barrington*, 180 A.D.3d 1364, 1365–66, 118 N.Y.S.3d 898, 901 (2020) (a "'defamation cause of action is not transformed into one for negligence merely by casting it as [such],'" and in circumstances "'in which plaintiff alleges an injury to his reputation as a result of statements made or contributed to by defendants, plaintiff is relegated to whatever remedy he might have under the law of defamation and cannot recover under principles of negligence'") (quoting *Colon v. City of Rochester*, 307 A.D.2d 742, 744, 762 N.Y.S.2d 749, 753 (4th Dep't 2003), *appeal dismissed and lv. denied* 100 N.Y.2d 628, 769 N.Y.S.2d 192, 801 N.E.2d 412 (2003)); *Berrio v. City of New York*, 2017 WL 118024, at *6 (S.D.N.Y. Jan. 10, 2017) (courts "routinely dismiss New York common law negligence claims where they seek damages for harm to reputation or damages flowing from that harm"); *Tipping v. Martin*, 2015 WL 5999666, at *9

because it is duplicative of Plaintiff's libel claims, the Court should dismiss Plaintiff's negligence claim because the Articles complained of would still be privileged fair reports, which privilege cannot be lost by a showing of negligence. *See supra* at 16-22..

In any event, the face of the Articles demonstrates the absence of negligence. Both Articles took pains to provide balanced reports, including summaries of Mr. Van Deelen's opposition to the Sanctions Proceeding. *See* Ex. A ¶¶ 4-7, Ex. B. ¶¶ 5-6; *see also* Ex. F. As the Amended Complaint acknowledges, Defendants' efforts included contacting Plaintiff before publication. *See* Am. Compl. ¶¶ 20, 21, 30, 35, 40. *See Compuware Corp. v Moody's Inv'rs Servs., Inc.*, 371 F. Supp. 2d 898, 903 (E.D. Mich. 2005) (call for comment before publication "far exceed[s] the requirements of a reasonable publisher or journalist"), *aff'd*, 499 F.3d 520 (6th Cir. 2007). On their face, the Articles thus demonstrate that Defendants were notnegligent, given that the Articles reported truthfully the contents of judicial records submitted in the Sanctions Proceeding, but also provided Plaintiff's side of the story.

### E.    The Virginia Immunity Statute Independently Bar's Plaintiff's Defamation And False Light Claims

Mr. Van Deelen's defamation claims (and his false light claim as well) fail for a separate and independent reason: Section 8.01–223.2 of the Virginia Code provides immunity to individuals exercising their right to speak on matters of public concern. That statute provides, in relevant part, that

> [a] person shall be immune from civil liability for … a claim of tortious interference with an existing contract or a business or contractual expectancy, or a claim of defamation based solely on statements … regarding matters of public concern that would be

---

(N.D. Tex. Oct. 14, 2015) (plaintiff's allegation that defendant "breached his legal duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under similar circumstances when he 'defamed Plaintiff'" "amounts to simply re-labeling her defamation … claim[] as negligence claims, which Texas courts do not permit").

> protected under the First Amendment to the United States
> Constitution made by that person that are communicated to a third
> party.

Va. Code Ann. § 8.01–-223.2(A) (2017).  The statute further provides that it "shall not apply to

any statements made with actual or constructive knowledge that they are false or with reckless

disregard for whether they are false."  *Id*.  It also allows for an award of reasonable attorney fees

and costs to "[a]ny person who has a suit against him dismissed pursuant to the immunity."  Va.

Code Ann. § 8.01–223.2(B).  The statute reflects the Virginia legislature's strong support for free

speech on matters of public concern.

Here, all the statements Plaintiff challenges clearly relate to "matters of public concern,"

in particular public judicial proceedings.  *See Doe v. Pittsylvania Cty.*, 844 F. Supp. 2d 724, 727

(W.D. Va. 2012) (noting "the public's legitimate interest in knowing all the facts and events

surrounding court proceedings") (citations and internal quotation marks omitted); *see also Cox*

*Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime, prosecutions

resulting from it, and judicial proceedings arising from the prosecutions . . . are without question

events of legitimate public concern.").

Defendants are thus immune from liability unless Mr. Van Deelen has alleged facts that, if

proven, would establish that statements published by Defendants were "made with actual or

constructive knowledge that they are false or with reckless disregard for whether they are false."

Va. Code Ann. § 8.01–223.2(A).  By its terms, the statute thus requires Mr. Van Deelen to plead

"actual malice."  *Compare id. with N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) (defining

"actual malice" as "knowledge that [the publication] was false or with reckless disregard of

whether it was false or not").  As noted *supra*, to properly plead actual malice and survive a motion

to dismiss, a plaintiff must plead "factual allegations" sufficient "to raise a right to relief above the

speculative level"; "conclusory allegation[s]" or a "mere recitation of the legal standard" are not sufficient. *Mayfield*, 674 F.3d at 377-78.

As discussed *supra*, the Amended Complaint contains mere generic recitals of the elements of actual malice, *see, e.g.*, Am. Compl. ¶¶ 30, 35, and conclusory assertions that Defendants knew that the statements were false. *Id*. But Mr. Van Deelen fails to plausibly allege that Defendants had any reason to doubt the veracity of anything that was actually published in either article in suit—especially in light of the court's order confirming McDermott's allegations that Mr. Van Deelen referred to the judge as a "son of a bitch" and granting the bankruptcy court movants certain relief. Mr. Van Deelen's actual malice allegations are thus conclusory and insufficient, and do not pass muster under *Iqbal* and *Twombly*: They "amount to little more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' which are insufficient to support a cause of action." *Michel*, 816 F.3d at 704 (quoting *Iqbal*, 556 U.S. at 678) (disregarding allegations that defendants were "reckless" in publishing article). Equally importantly, the Articles repeat Mr. Van Deelen's denials as to each of the allegations asserted by McDermott's emergency motion. *See* Exs. A-B, F.

Because Van Deelen cannot plausibly allege that the Articles were published with actual malice, Defendants are immune from the defamation and tortious inference claims under the Virginia statute. The claims should be dismissed, and Defendants should be awarded their reasonable attorneys' fees and costs pursuant to Va. Code Ann. § 8.01–223.2(B).

## RELIEF REQUESTED

Wherefore, Defendants respectfully request that the Court enter an order granting their Motion to Dismiss the Amended Complaint in its entirety and with prejudice, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted, and granting such further relief , including attorneys' fees and costs, as the Court deems just and proper.

This 20th day of July, 2020.

Respectfully submitted,


J. Marshall Gardner
Richard J. Davis
MAYNARD COOPER & GALE, PC
11 North Water Street, Suite 24290
Mobile, AL  36602-5024
Telephone: (251) 432-0001
Facsimile: (251) 432-0007
mgardner@maynardcooper.com
rdavis@maynardcooper.com

/s/ *Lisa B. Zycherman*
Laura R. Handman (appearing *pro hac vice*)
Lisa B. Zycherman (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Ph: 202-973-4200; Fax: 202-973-4499
laurahandman@dwt.com
lisazycherman@dwt.com

*Counsel for Defendants Bloomberg L.P. and Daniel Gill*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I have, this 20th day of July, 2020, electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will forward a copy thereof to all attorneys of record.  By agreement of the parties, a copy is also being served via email on the Plaintiff.


                                     /s/ *Lisa B. Zycherman*_____
                                     Lisa B. Zycherman (appearing *pro hac vice*)